UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANA BOWMAN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:23-CV-00970-X |
| SWBC REAL ESTATES SERVICES, | § | |
| LLC, SWBC ROCKWALL LP, | § | |
| JORDAN FOSTER CONSTRUCTION | § | |
| LLC, SWBC RW2, LP, and LUXIA | § | |
| ROCKWALL DOWNES, LLC | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dana Bowman is a disabled veteran who visited the defendant properties and sued under several Fair Housing Act provisions regarding barriers to access for disabled persons in housing. The defendants moved to dismiss (Jordan Foster Construction LLC at Doc. 29 and the remaining defendants ("SWBC Defendants") at Doc. 25), arguing that Bowman is a mere tester who lacks a concrete injury and thus has no standing to bring his claims. Whether testers have standing has been the subject of many court orders as of late. Those cases that bind this Court make a couple of principles clear. First, the Supreme Court has found standing on receiving bad information when the law forbids the type of unlawful information the defendant gave the plaintiff.[1] Second, the Fifth Circuit has found no standing when a disabled plaintiff sued a hotel regarding barriers in violation of the Americans with

---

[1] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982).

Disabilities Act.[2]  The Fifth Circuit determined that a plaintiff visiting a website to check compliance did "not show enough of a concrete interest in [the hotel's] accommodations to confer standing" because she only had general plans to visit the area.[3]

Here, Bowman's complaint expresses no concrete desire to rent an apartment from the defendants or visit a tenant there.  Instead, Bowman alleges he visited the property and was offered a unit to rent but encountered architectural barriers.  He claims he was injured by the visit in terms of frustration, emotional distress, and out-of-pocket costs in making the visit and expresses concern for others with disabilities who encounter the barriers.  But the complaint doesn't describe an interest in renting one of the apartments or visiting a tenant there.  Instead, it describes an interest in suing.  As explained below, the Court **GRANTS IN PART** Jordan Foster's motion to dismiss for lack of standing as to Bowman's claims under 42 U.S.C. § 3604(f)(1), and **GRANTS IN PART** as to Bowman's claims under 42 U.S.C. § 3604(f)(2).  The Court likewise **GRANTS IN PART** the SWBC Defendants' motion to dismiss for lack of standing as to Bowman's claims under 42 U.S.C. § 3604(f)(1), and **GRANTS IN PART** as to Bowman's claims under 42 U.S.C. § 3604(f)(2) and as to the SWBC Defendants' Rule 12(b)(6) arguments.  Bowman has 28 days to replead his complaint, and the repleading changes must be limited to addressing the defects in this order.

[2] *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021).

[3] *Id*. at 272.

2

## I. Factual Background

Bowman is a veteran special forces soldier who lost the lower half of both legs. Before filing suit, Bowman visited the defendant properties, consisting of roughly 590 apartments over multiple buildings.  Bowman says he "was offered a unit for rent," but his complaint is silent on whether he expressed or has an interest in renting an apartment or visiting a tenant.[4]  The complaint indicates Bowman "cannot independently use certain features of the Property."[5]  Bowman claims the visit injured him by causing "frustration, physical difficulty, indignation and emotional distress, [that] arose from encountering discriminatory barriers at the Property," and that he had out of pocket costs to visit the property.[6]  And Bowman expressed "concern[] [over] whether apartments are accessible and usable for people with disabilities."[7]

Defendants moved to dismiss.  Jordan Foster Construction LLC ("Jordan Foster") argues that Bowman lacks standing.  The SWBC Defendants argue lack of standing and also frame the allegations in the complaint as being too vague to survive a Rule 12(b)(6) challenge.

## II. Legal Standards

---

[4] Doc. 24 at 8.

[5] *Id.*

[6] *Id.*

[7] *Id.*

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss a case for lack of subject-matter jurisdiction.[8]  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[9]  This is so because it prevents a court without jurisdiction from prematurely dismissing a plaintiff's claim with prejudice.[10]  A court may find lack of subject-matter jurisdiction in any of three instances: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[11]  The party asserting jurisdiction bears the burden of proof to establish that subject-matter jurisdiction exists.[12]

A federal court's Article III jurisdiction is limited to "Cases" and "Controversies."[13]  The doctrine of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.[14]   Standing includes three elements.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged

---

[8] FED. R. CIV. P. 12(b)(1).

[9] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] U.S. Const. art. III, § 1.

[14] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[15]

And Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a claim that's not plausibly alleged. To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[16] A claim is plausible when it "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"[17] which requires "more than a sheer possibility that [the] defendant has acted unlawfully."[18] "[A] formulaic recitation of the elements of a cause of action will not do."[19] And the pleading must offer "more than an unadorned, the defendant-unlawfully-harmed-me accusation."[20] The court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[21]

### III. Analysis

### A. Spectrum of Binding Cases

The two binding cases on standing for testers shows that the plaintiff must have a concrete interest in what the statute protects. The first case is from the Supreme Court. In *Havens Realty Corp. v. Coleman*, the statute was a section of the

---

[15] *Id.* at 560–61 (cleaned up).

[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Id.*

[19] *Id.* (cleaned up).

[20] *Id.*

[21] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (cleaned up).

Fair Housing Act that created a "right to truthful housing information."[22]  There, two testers (one black and one white) asked the same property about renting an apartment.  The apartment staff told the white tester there were vacancies and the black tester there were none.[23]  The Supreme Court determined the black tester had standing because she had a "specific injury" from the untruthful housing information the Fair Housing Act outlawed.[24]  But the white tester had no injury from false housing information, so the Supreme Court "discern[ed] no support for the Court of Appeals' holding that [the white tester] has standing to sue in his capacity as a tester."[25]  So we know from the high Court that the "tester" label doesn't matter, the injury does.

In *Laufer v. Mann Hospitality, L.L.C.*, the Fifth Circuit confirmed that testers only have standing if they establish a concrete interest in what the law protects.[26] The law at issue was a provision of the Americans with Disabilities Act that prevents barriers to entry for disabled persons in public accommodations (like hotels and restaurants).[27]  There, the disabled plaintiff lived in Florida, had never been to Texas, had "no definite plans to travel to the Sunset Inn or anywhere else in Texas," but sued the Sunset Inn in Caldwell, Texas anyway.[28]  The plaintiff claimed that the

---

[22] 455 U.S. at 374.

[23] *Id*. at 368.

[24] *Id*. at 374.

[25] *Id*. at 375.

[26] 996 F.3d at 271.

[27] *Id*.

[28] *Id*.

booking website didn't identify accessible rooms and that she "intend[s] to travel all throughout [Texas], . . . including Caldwell."[29]  The Fifth Circuit was "grateful for her show of interest in the region" but "note[d] that Laufer has filed hundreds of identical lawsuits in federal district courts around the country."[30]  The Fifth Circuit found she had no concrete injury from an interest the Americans with Disabilities Act protects because "Laufer fail[ed] to show how the alleged violation affect[ed] her in a concrete way.  While she does claim to have visited the [booking website], she does not claim she tried to book a room or even intended to do so."[31]  The Court summed that Laufer "visited the [booking website] to see if the motel complied with the law, and nothing more.  Such allegations do not show enough of a concrete interest in [the defendant's] accommodations to confer standing."[32]  And the Fifth Circuit confirmed that Laufer had no standing for an informational injury or as a "tester" because she was suing for violations of a law about accommodations, not information.[33]

The parties point to other non-binding cases, but the Court opts to stick with the cases that bind it.

## B. Fair Housing Act

The law at issue here is a provision of the Fair Housing Act forbidding architectural barriers in housing.[34]  Three separate provisions of the Fair Housing

---

[29] *Id*. (alterations in original).

[30] *Id*.

[31] *Id*. at 272.

[32] *Id*.

[33] *Id*.

[34] 42 U.S.C. § 3604(f).

Act are relevant here: Sections 3604(f)(1); (f)(2); and (f)(3).[35]  Sections 3604(f)(1) and

(f)(2) forbid housing discrimination because of a handicap.  And section 3604(f)(3)

describes when discrimination occurs:

> (c) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that—
>
> > (i)     the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
> >
> > (ii)    all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
> >
> > (iii)   all premises within such dwellings contain the following features of adaptive design:
> >
> > > (I)     an accessible route into and through the dwelling;
> > >
> > > (II)    light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
> > >
> > > (III)   reinforcements in bathroom walls to allow later installation of grab bars; and
> > >
> > > (IV)    usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.[36]

The Court next analyzes Bowman's claims under sections 3604(f)(1) and (f)(2)

in turn.[37]

### i. Section 3604(f)(1)

---

[35] Doc. 24 at 11.

[36] 42 U.S.C. § 3604(f)(3)(C).

[37] The Court follows the textualist analysis in *Bowman v. Wildwood of Lubbock, LLC*, No. 5:19-CV-164-H, 2020 WL 10458628 (N.D. Tex. Oct. 23, 2020) (Hendrix, J.).

Section 3604(f)(1) holds that it is unlawful "to discriminate in the sale or rental, or to otherwise make available or deny, a dwelling to any buyer or renter because of a [person's] handicap."[38]  This District has found that the language "in the sale or rental . . . [of] a dwelling" narrows this provision to those plaintiffs who "engage[d] in [a] rental activity."[39]  "To rent" is defined in the broader statute as including "to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant."[40]  This definition of "to rent" seems to hark back to 1L property law.  Analogizing the Fair Housing Act to the Americans with Disabilities Act is helpful here for its distinction of public use areas.

In a restaurant covered by the Americans with Disabilities Act, a customer is an invitee under the law and has permission to be in the public use spaces (the dining room and bathrooms).  So a disabled customer that went to the restaurant or had concrete plans to go would presumably have standing to bring a claim under the Americans with Disabilities Act for unlawful barriers.  Would that same disabled customer have standing to challenge architectural barriers in the restaurant's kitchen?  Nope.  He has no legal right to access the kitchen as a customer and thus no concrete injury.

So back to the Fair Housing Act.  Here, like the plaintiff in *Wildwood of Lubbock*—indeed, the *same* plaintiff—Bowman's complaint is bare as to any allegations that he took steps to grant for consideration the right to occupy the

---

[38] 42 U.S.C. § 3604(f)(1).

[39] *Wildwood of Lubbock*, 2020 WL 10458628, at *7.

[40] 42 U.S.C. § 3602(e).

Property.[41]  Though Bowman claims in this case he was "offered a unit to rent,"[42] his complaint never alleges that he leased an apartment or even filled out a rental application.  Bowman has no standing to challenge barriers in an apartment under section 3604(f)(1) which seems to require contractual consideration.  "Section 3604(f)(1) applies only to discrimination 'in the sale or rental' of a dwelling."[43]  The text of this provision seems to provide a cause of action for individuals who had a right to the property.  That's not Bowman.  The Court finds that Bowman's complaint fails to allege Bowman undertook rental activity.  As such, the Court **GRANTS** the motions to dismiss for lack of standing as to Bowman's claims under Section 3604(f)(1).

### ii. Section 3604(f)(2)

Section 3604(f)(2) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a [person's] handicap."[44] This provision has been interpreted more broadly in this District because it doesn't have the modifier "in the sale or rental" of a dwelling.[45]  When reading a statute's text, "no provision 'should needlessly be given an interpretation that causes it to

---

[41] *Wildwood of Lubbock*, 2020 WL 10458628, at *7.

[42] Doc. 24 at 8.

[43] *Wildwood of Lubbock*, 2020 WL 10458628, at *7.

[44] 42 U.S.C. § 3604(f)(2).

[45] *Wildwood of Lubbock*, 2020 WL 10458628, at *6.

duplicate another provision or to have no consequence."[46] So because section 3604(f)(2) isn't limited to a plaintiff who engaged in rental activity as in section 3604(f)(1), under section 3604(f)(2), courts in this District have held that "a party discriminates against any handicapped person who visits the property, not only handicapped persons who have an intent to rent," if the handicapped person visited the property and encountered architectural barriers in violation of the Fair Housing Act.[47] So, whether a plaintiff has demonstrated intent to rent or not—[48]a concrete injury can be found under § 3604(f)(2) if a plaintiff is unable to access "the privileges of a rental of a dwelling."[49]

Here, Bowman's complaint sufficiently alleges that he was unable to access these types of privileges. Among other things, Bowman stated that "the centralized mailbox center was not accessible" and that "there was no accessible route . . . to public transportation stops . . . from the accessible building entrances."[50] Bowman also alleges the Property had thermostats installed at heights that would be unreachable to someone in a wheelchair and bathrooms were inaccessible for

---

[46] *Id.* (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107, 174 (Thompson/West 2012)).

[47] *Id.* at *4.

[48] *See id.* at *3 (discussing cases in the Ninth Circuit and this District that have extended the Supreme Court's finding of tester standing in *Havens Realty*—regardless of intent—under the Fair Housing Act's provisions prohibiting racial discrimination to the Fair Housing Act's provisions prohibiting discrimination against disabled persons).

[49] *Id.* at *4 (finding Bowman suffered an injury in fact under this provision because the complaint alleged that Bowman encountered doorways that did not accommodate his wheelchair and the ramps had slopes that were too steep).

[50] Doc. 24 at 9.

maneuvering with a wheelchair.[51]  But the complaint lacks specificity on where these thermostats and bathrooms were.  If these were in common use areas or a dwelling Bowman had a lawful right to enter, they seem fair game for him to sue.  If Bowman is complaining about thermostats and bathrooms in rented units he has no right to access, then it does not seem that he encountered those barriers or was harmed by them—predicates to standing in any case.  Bowman's repleading should address where he encountered the barriers he is suing over.  Accordingly, the Court **GRANTS IN PART** the motion to dismiss Bowman's claims under section 3604(f)(2) and allows him 28 days to replead and specify where he encountered the barriers.

### C. 12(b)(6)

The SWBC defendants also argued the complaint flunks Rule 12(b)(6) for failure to identify what provision of the Fair Housing Act was allegedly violated. Since the Court only has subject matter jurisdiction over Bowman's claims under 42 U.S.C. § 3604(f)(2) with the definitions of discrimination in § 3604(f)(3), it only considers the merits of those claims.  The Court denies the motion at this stage and will reassess it when Bowman files his amended complaint.

### IV. Conclusion

---

[51] *Id.* at 10.

12

The Supreme Court is tightening the belt on injuries in fact under Article III.[52] The Fifth Circuit is doing so when it comes to the Americans with Disabilities Act.[53] But at least for now,[54] under *Havens Realty*, § 3604(f)(2) of the Fair Housing Act finds a concrete injury when a property's barriers hinder a person's ability to access the "privileges" of the rental.  While it is clear Bowman cannot sue over architectural barriers he did not observe and was not injured by, his complaint lacks clarity on the barriers he did observe.

For the foregoing reasons, the Court **GRANTS IN PART** Jordan Foster's motion to dismiss for lack of standing as to Bowman's claims under 42 U.S.C. § 3604(f)(1), and **GRANTS IN PART** as to Bowman's claims under 42 U.S.C. § 3604(f)(2).  The Court likewise **GRANTS IN PART** the SWBC Defendants' motion to dismiss for lack of standing as to Bowman's claims under 42 U.S.C. § 3604(f)(1), and **GRANTS IN PART** as to Bowman's claims under 42 U.S.C. § 3604(f)(2) and as to the SWBC Defendants' Rule 12(b)(6) arguments.   Bowman has 28 days to replead his complaint, and the repleading changes must be limited to addressing the defects in this order.

**IT IS SO ORDERED** this 14th day of March, 2024.

---

[52] *See TransUnion L.L.C. v. Ramirez*, 594 U.S. 413, 427 (2021) ("As then-Judge Barrett succinctly summarized, 'Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.'" (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)).

[53] *See Laufer*, 996 F.3d at 272.

[54] *See* Catherine Cole, *A Standoff: Havens Realty v. Coleman Tester Standing and TransUnion v. Ramirez in the Circuit Courts*, 45 Harv. J.L. & Pub. Pol'y 1033, 1054 (2022) ("*Havens Realty* and *TransUnion* are in a standoff, each case representing a theory of Article III standing incompatible with the other.")

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE